NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
AMBER ARPAIO, :
:
        Plaintiff,     :   Civil Action No. 08-3548 (JAP)
  v.           :
           :   **OPINION**
ASHLEY ALEXANDRA DUPRE, :
JOSEPH FRANCIS, :
MRA HOLDING, LLC, MANTRA :
FILMS, INC., JOHN DOES 1 through 10, :
and ABC CORPORATIONS 1 through 10, :
:
        Defendants. :
_____ :

PISANO, District Judge.

      On July 11, 2008, Plaintiff Amber Arpaio commenced this action against Defendants Joseph Francis, MRA Holding, LLC, Mantra Films, Inc., and Ashley Alexandra Dupre (collectively, "Defendants"). Plaintiff's claims stem from Dupre's use of Plaintiff's name and likeness in a salacious video and its subsequent publication on the Internet by Francis. The video's publication quickly followed the revelation that Dupre was the infamous prostitute at the center of the scandal that led to the resignation of New York Governor Eliot Spitzer. Though Plaintiff received a waiver of service from the other defendants, her efforts to serve Dupre encountered obstacles that cast doubt on their effectiveness. At a proof and damages hearing held before the Court on October, 19, 2010, Plaintiff detailed her efforts to serve process on Dupre, substantiated the damages caused by Defendants' actions, and requested an entry of default judgment. For the reasons set forth below, the Court enters default judgment for Plaintiff against Defendants Joseph Francis, MRA Holding, LLC, and Mantra Films, Inc. Because

service of process on Defendant Dupre was not made, however, the Court orders Plaintiff to effect proper service against Dupre or her claims against her will be dismissed for failure to prosecute.

I.      Factual Background

Eliot Spitzer resigned from the office of Governor of the State of New York on March 12, 2008.  Two days earlier, the *New York Times* reported that the governor had "been caught on a federal wiretap arranging to meet with a high-priced prostitute at a Washington hotel."  Danny Hakim & William K. Rashbaum, *Spitzer Is Linked to Prostitution Ring*, N.Y. Times, Mar. 10, 2008, *available at* http://www.nytimes.com/2008/03/10/nyregion/10cnd-spitzer.html. The "high-priced prostitute" with whom Spitzer had his Washington assignation was later revealed as Defendant Ashley Alexandra Dupre.[1]  Media coverage surrounding the affair was intense as the scandal took on a wide public following and the players became notorious.  Indeed, Dupre was soon acknowledged by the celebrity gossip industry as "the most famous prostitute in America." *Ashley Dupre Offered $1 Million By Girls Gone Wild*, The Hollywood Gossip (Mar. 18, 2008, 12:09 PM), http://www.thehollywoodgossip.com/2008/03/ashley-dupre-offered-1-million-by-girls-gone-wild/.

Hoping to capitalize on the media attention, Defendant Joseph Francis, head of Defendant Mantra Films, Inc. ("Mantra"), offered Dupre $1 million to appear in a magazine spread and participate in a promotional tour with the "Girls Gone Wild" franchise.  Solvej Schou, *'Girls Gone Wild' founder says Spitzer call girl was in video archives; pulls $1 million offer*,

---

[1]     It is unclear if this defendant's legal name is Ashley Alexandra Dupre.  News reports refer to her birth name as Ashley Youmans, with a legal change to the name Ashley Rae Maika DiPietro.  *See* Serge F. Kovaleski & Ian Urbina, *For an Aspiring Singer, a Harsher Spotlight*, N.Y. Times, March 13, 2008, *available at* http://www.nytimes.com/2008/03/13/nyregion/12cnd-kristen.html.  In the event that "Dupre" is not the defendant's actual name, the Court treats it as a *nom de guerre* and the case will proceed against her as Dupre a.k.a. Youmans.

Associated Press, Mar. 19, 2008. "Girls Gone Wild" has been described as "a popular series of sexually graphic DVDs . . . which feature young women drinking and partying while frequently exposing themselves in whole or in part." *United States v. Mantra Films, Inc.*, 240 Fed. Appx. 372, 372 (11th Cir. 2007).[2] This offer was quickly pulled off the table, however, when Francis discovered that he had archived footage of Dupre from five years earlier, when Dupre joined a "Girls Gone Wild" bus tour for a week. *See* Schou, *supra*.

On April 28, 2008, Dupre filed a $10 million federal suit in Florida against Francis, alleging that he improperly used her image from archived footage to promote his "Girls Gone Wild" series. *See* Complaint, *Dupre v. Francis, et al.* ("*Dupre v. Francis*"), Civil Action no. 1:08-cv-21238 (S.D. Fla. 2008). Dupre further alleged that because she was only 17 years of age at the time, she did not understand the implications of signing any legal release. *Id.* According to news reports, Francis responded by releasing a video to the public in which a 17-year-old Dupre, covered only in a towel, provides consent to be in "Girls Gone Wild," states that she is 18, and provides her name as Amber Arpaio. Curt Anderson, *'Girls Gone Wild': Video proves call girl agreed to appear*, Associated Press, Apr. 30, 2008. The video also provides a close-up view of a New Jersey driver's license in the name of Amber Arpaio. *Id.* Soon after the release of the video, Dupre voluntarily dismissed her suit against Francis. *See* Order Dismissing Case, *Dupre v. Francis*.

II.   Service of Process

On July 11, 2008, Plaintiff Amber Arpaio filed her Complaint against Dupre, Francis, Mantra, and MRA Holding, LLC ("MRA"), seeking compensatory and punitive damages for invasion of her privacy, misappropriation of her name for Defendants' benefit, unauthorized use

---

[2]   This was an unrelated case in which Mantra pled guilty to violating the Child Protection Restoration and Penalties Enhancement Act of 1990.

of her name for advertisement, defamatory injury to her reputation, and conspiracy.  Plaintiff submitted an affidavit testifying to the difficulty in serving the named defendants on December 29, 2008.  On January 7, 2010, Plaintiff filed proof that Francis, Mantra, and MRA waived service and the Clerk of the Court accordingly entered default against those defendants on April 5, 2010.

Service upon Dupre proved to be more problematic.  On March 9, 2009, Plaintiff's process server observed a woman leaving from Dupre's "last known address" in Wall, New Jersey.  Aff. of Service, (Docket Entry no. 19).  Upon the woman's entering her Mercedes Benz, the process server followed her to a fitness club in nearby Manasquan.  "Upon exiting the vehicle," however, "it is determined that the female is Ashley Dupre's mother who looks extremely youthful and similar to Ashley."  *Id.*  The process server returned the next day to Dupre's "last known address," where loud music was playing.  Upon the process server's knocking on the front door, the music ceased.  After twenty seconds, the process server began to knock again, and the music restarted.  "Now [the process server] knocks on the door using a large brass knocker fastened to the door.  It is an extremely loud and effective knocker, but the music continues and no one comes to the door."  *Id.*  The process server then left a copy of the summons in the residence's mailbox.  From May through July 2009, Plaintiff's counsel had no less than three phone calls with another lawyer who revealed to him that she had been approached by Dupre regarding possible legal representation in this matter and acknowledged that Dupre did receive the summons and complaint.[3]  *Id.*  After filing with the Court an affidavit describing the previous attempts to serve Dupre, the Clerk of the Court entered default against Dupre on August 31, 2009.

---

[3] As of the date of Plaintiff's affidavit of service, it appears that Dupre did not retain the services of this lawyer in connection with this matter.

4

The Court conducted a proof and damages hearing on October 19, 2010, in which Plaintiff moved for an entry of default judgment against all defendants. At the hearing, the Court asked Plaintiff's counsel to submit an additional affidavit of service upon Defendants, which Plaintiff filed on November 8, 2010. That affidavit, (Docket Entry no. 37), explained the initial difficulty in serving Defendants and provided proof of the waiver of service by Francis, Mantra, and MRA. The affidavit also reiterated the process server's attempts to serve Dupre and the communications between Plaintiff's counsel and the lawyer approached by Dupre. *Id.* The affidavit concluded by describing Plaintiff's mailing Dupre an amended complaint by certified mail, which was returned "unclaimed." *Id.*

III.   Discussion

    A.   Sufficiency of Service of Process

Service of process is governed by Federal Rule of Civil Procedure 4, which provides four methods for serving an individual within a judicial district of the United States: (1) delivering a copy of the summons and of the complaint to the individual personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process; or (4) following state law for service of process. Fed. R. Civ. P. 4(e). Generally, federal courts have no power to render a judgment against a party who has not been served properly. *Taylor v. Sturgell*, 553 U.S. 880, 884, 128 S. Ct. 2161, 2167 (2008) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation . . . to which he has not been made a party by service of process."). Accordingly, as a general matter, the Third Circuit recognizes that the entry of a default judgment without proper service renders that judgment void. *United States v.*

5

*One Toshiba Color Television*, 213 F.3d 147, 156 (3d Cir. 2000) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir.1985)).  Finally, actual notice to the defendant is not an appropriate substitute for proper service of process.  *See, e.g.*, *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S. Ct. 404, 409 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant . . . ."); *In re Mansaray-Ruffin*, 530 F.3d 230, 242 (3d Cir. 2008) (stating that "actual knowledge" of a case did not eliminate the right to service of process).

A review of the record reveals that Dupre was not properly served.  Plaintiff's counsel avers in an affidavit that a process server left a copy of the complaint and summons in the mailbox of Dupre's "last known address."  Such delivery does not constitute personal delivery, nor delivery to an individual at Dupre's dwelling or usual place of abode, nor delivery to an agent.  It does not constitute service as otherwise allowed by New Jersey law.  Therefore, service was not effected pursuant to Federal Rule of Civil Procedure 4.  Plaintiff's counsel further states by way of affidavit that Dupre had actual notice of the action because she had approached another lawyer about possible representation in this matter.  *See* Affs. of Service, (Docket Entry nos. 19 & 37).  Actual notice, however, is not a sufficient substitute for proper service.  *Omni Capital Int'l, Ltd.*, 484 U.S. at 104.  Because service was defective, it is not proper for the Court to enter default judgment against Dupre.  The Court instead will allow Plaintiff 45 days to properly serve Dupre, or the claim against her will be dismissed for failure to prosecute.  An appropriate order shall issue.

      B.      Default Judgment

In an application for an entry of default judgment, the Court accepts as true any facts contained in the pleadings regarding liability.  Fed. R. Civ. P. 8(b)(6).  Legal conclusions,

however, are not deemed admitted. *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). Neither are the extent and amount of damages claimed by a party. Fed. R. Civ. P. 8(b)(6). Thus, the Court must receive an affidavit or conduct a hearing in which damages are substantiated unless the claim is for a sum certain or a sum that can be made certain by computation. *See* Fed. R. Civ. P. 55(b)(1) (allowing the Clerk's entry of default judgment when damages amounts are certain).

Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). The Third Circuit "does not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192 (3d Cir. 1984). Rather, it prefers adjudication on the merits. *Hill v. Williamsport Police Dep't*, 69 Fed. Appx. 49, 51 (3d Cir. 2003). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).[4]

In the pleadings, Plaintiff asserts several causes of action against the defendants. Her first claim is for invasion of privacy. New Jersey law recognizes an invasion of privacy claim involving "publicity that unreasonably places the other in a false light before the public." *Romaine v. Kallinger*, 537 A.2d 284, 289-90 (N.J. 1988). The Supreme Court of New Jersey has stated:

---

[4] The Court notes the criticism of *Chamberlain* as transposing the factors for vacating default judgment into the factors for entering a default judgment. *See Hill v. Williamsport Police Dep't*, 69 Fed. Appx. 49, 51-52 (3d Cir. 2003). Nevertheless, the Court also acknowledges *Chamberlain* as the law in this Circuit and has "no choice" but to "follow *Chamberlain* pending *en banc* review and reversal." *Id.* at 52.

> Liability for this form of privacy invasion is found when one gives publicity to a matter concerning another that places the other before the public in a false light and (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.* at 290.  Plaintiff alleges in her pleadings that Francis, Mantra, and MRA presented a video to the general public wherein Dupre represented herself as Plaintiff.  Plaintiff further alleges that Dupre was affiliated with the "Girls Gone Wild" franchise, which includes a popular video series in which women expose themselves and perform sexual acts.  Plaintiff further alleges that Francis, Mantra, and MRA knew or recklessly disregarded that Dupre was not in fact Plaintiff, and that they knew or recklessly disregarded that Plaintiff would be perceived by the general public to be associated with the "Girls Gone Wild" franchise.  Assuming that these facts are true, as the Court must in response to an application for an entry of default judgment, Plaintiff has met her burden for proving liability for an entry of default judgment as to an invasion of privacy.

Plaintiff also makes a claim for misappropriation of her name for Defendants' benefit.  Under New Jersey law, publicly exposing someone else's name or likeness for a commercial or beneficial purpose is actionable.[5]  *See Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 693 (N.J. Super. Ct. App. Div. 1982) (explaining that publicity is actionable when it is "shown that defendant acted with a commercial purpose or otherwise sought some benefit from revealing information about plaintiffs").  Citing from the Restatement (Second) of Torts, the New Jersey Superior Court specified that "when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness . . . the right of privacy is invaded." *Id.*  Plaintiff alleges in her pleadings that that Francis, Mantra, and MRA presented a video to the general public wherein Dupre represented herself as Plaintiff.

---

[5] This cause of action also encompasses another claim by Plaintiff for unauthorized use of her name for advertisement.

8

Plaintiff further alleges that Francis, Mantra, and MRA have used this video in their marketing and advertising.  Assuming that these facts are true, as the Court must in response to an application for an entry of default judgment, Plaintiff has met her burden for proving liability for an entry of default judgment as to a misappropriation of her name for Defendants' benefit.

Plaintiff next makes a claim for defamatory injury to reputation.  Under New Jersey law, anyone who makes a false and defamatory statement of fact to another person concerning a private figure is liable if he or she had actual knowledge that the statement was false, or recklessly disregarded the statement's truth or falsity, or acted negligently by failing to determine the falsity of the statement.  *Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996).  Plaintiff alleges in her pleadings that Francis, Mantra, and MRA presented a video to the general public wherein Dupre represented herself as Plaintiff.  Plaintiff further alleges that Dupre was affiliated with the "Girls Gone Wild" franchise, which includes a popular video series in which women expose themselves and perform sexual acts.  Plaintiff further alleges that Francis, Mantra, and MRA knew that Dupre's representation was false when they presented the video to the general public, or recklessly disregarded the statement's truth or falsity.  Assuming that these facts are true, as the Court must in response to an application for an entry of default judgment, Plaintiff has met her burden for proving liability for an entry of default judgment as to defamatory injury to reputation.

Plaintiff makes a final claim for conspiracy to commit a tort.  "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div.

1993) (citations and internal quotation marks omitted). Plaintiff alleges that Francis, MRA, and Mantra collectively acted to defame Plaintiff when they presented a video to the general public wherein Dupre represented herself as Plaintiff. Assuming that these facts are true, as the Court must in response to an application for an entry of default judgment, Plaintiff has met her burden for proving liability for an entry of default judgment as to a conspiracy to commit a tort.

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. It is clear that prejudice to Plaintiff would result from a denial of default judgment because Plaintiff would be required to further prosecute the case against defendants who have not yet answered. Such prosecution costs time and money. Defendants have made no showing of any litigable defense, although the Court notes, *sua sponte*, the defective service on Dupre to avoid unnecessary litigation upon entry of default judgment. Finally, Defendants have made no showing that their delay is due to any legitimate reason. Therefore, with respect to Francis, Mantra, and MRA, the Court will enter default judgment. For reasons set forth above, an entry of default judgment will not issue against Dupre. An appropriate order shall issue.

IV.     Assessment of Damages

Plaintiff's claims for invasion of privacy and misappropriation of her name both fall under the action of invasion of privacy. *See Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994) (explaining four classifications of invasion of privacy). The Restatement (Second) of Torts § 652H (1977) recognizes the following damages for invasion of privacy:

> One who has established a cause of action for invasion of his privacy is entitled to recover damages for (a) the harm to his interest in privacy resulting from the invasion; (b) his mental distress proved to have been suffered if it is of a kind that

normally results from such an invasion; and (c) special damage of which the invasion is a legal cause.

For her claims of defamation, Plaintiff is entitled to damages for all the detrimental effects of a defamatory statement relating to Plaintiff's reputation which were reasonably to be foreseen and which are the direct and natural result of the defamatory statement. New Jersey's Model Civil Jury Charges describe the proof necessary for damages claimed for defamation:

> [Plaintiff] seeks compensatory damages for particular material, economic or financial losses suffered directly by him/her as the proximate result of the injury to the his/her reputation caused by the defamation. These compensatory damages are sometimes referred to as special damages.  These damages are never presumed; they must be specified by [plaintiff] and proved by the evidence.  [Plaintiff] must show you what the special loss was and by what sequence of connected events it was produced by the defamation.  [Plaintiff] can recover these damages only if you determine that [defendant's] conduct was a substantial factor in causing [plaintiff's] material, economic or financial losses.  Evidence of embarrassment, mental suffering or physical sickness will not, without more, entitle [plaintiff] to these damages. . . .
> The foundation of an action for defamation is the injury to reputation.  Hence, any award [made] as part of the compensation to plaintiff may only be to redress consequences which followed from injury to [plaintiff's] reputation.  In connection with [plaintiff's] claimed emotional distress . . . she may be compensated . . . for such ill effects only if . . . she experienced them because of the actual damage done to his/her reputation.  If . . . his/her emotional suffering was caused only by his/her having (read the libel) (heard the slander), and not by the publication's impact upon his/her reputation, you may not consider such suffering in arriving at the amount of damages you choose to award [plaintiff].

N.J. Model Jury Charge (Civil) 8.46 "Defamation Damages" (March 2010).

Plaintiff also seeks punitive damages.  Punitive damages may only be awarded if Plaintiff has proved, by clear and convincing evidence, that the harm suffered by Plaintiff was the result of a defendant's actions or omissions and that either (1) the defendant's conduct was malicious or (2) the defendant acted in wanton and willful disregard of another's rights.  N.J. Model Jury Charge (Civil) 8.60 "Punitive Damages Actions" (March 2010).

11

The Court held a proof and damages hearing on October 19, 2010.  At the hearing, the Court heard testimony from Plaintiff; Plaintiff's father, Jerry Arpaio; and Miles Benjamin Neustein, Esq., qualified as an expert on the dissemination of information through the Internet.  Plaintiff and her witnesses presented evidence on the extent of injury caused by Defendants' actions and statements and the emotional distress incurred by Plaintiff.  Plaintiff testified to her distress from being mistaken as somehow affiliated with Dupre or "Girls Gone Wild."  She also expressed fear that any future employment is jeopardized because an Internet search would be conducted upon application; and, further, that she is apprehensive that, were she to have children, they would be exposed to the insulting material.  The Court finds her concerns to be well-founded.  Her father also related his reaction to the Internet video and his daughter's emotional distress.  In addition, Plaintiff submitted for the Court a report from her psychologist, who concluded that as a result of Defendants' actions, Plaintiff now "carries deep psychological scars," and exhibits "a number of classic symptoms of post-traumatic stress disorder."  (Pl.'s Proposed Findings of Fact, Exh. A).

Plaintiff also submitted a report by Mr. Neustein that paralleled his testimony.  *See id.*  Mr. Neustein presented evidence that a simple Google search of Plaintiff's name produces over 130,000 "hits," or sites that contain her name, many of which feature pornographic material.  *Id.*  He concluded that "the public light [that the posting of the Internet video] has cast upon the Plaintiff is not only international in scope, but also is one wholly and irrevocably tied [to] the rawest of pornography and all things otherwise appealing to the prurient interest."  *Id.*  Indeed, "given the unique nature of the Internet," Mr. Neustein wrote, "this branding is for life," and highly likely to adversely impact her employment prospects and personal relationships.  *Id.*  Having found the testimony of these witnesses to be credible, and having reviewed Plaintiff's

12

justification for damages and its associated reports, the Court will grant Plaintiff's request for an award of damages in the amount of $3,000,000. An appropriate order shall issue.

V.     Conclusion

Because the Court must accept as true all facts pled, it enters default judgment against Defendants Francis, Mantra, and MRA. Having found service against Defendant Dupre to be defective, the Court cannot enter default judgment against her, but will instead allow Plaintiff 45 days to properly serve Dupre, or the claim against her will be dismissed for failure to prosecute. An appropriate order shall issue.


                                         /s/ JOEL A. PISANO
                                         United States District Judge

Dated: March 3, 2011