NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AMBER ARPAIO, | : | |
| Plaintiff, | : | Civil Action No. 08-3548 (JAP) |
| v. | : | **OPINION** |
| ASHLEY ALEXANDRA DUPRE, JOSEPH FRANCIS, MRA HOLDING, LLC, MANTRA FILMS, INC., JOHN DOES 1 through 10, and ABC CORPORATIONS 1 through 10, | : | |
| Defendants. | : | |

PISANO, District Judge.

This matter comes before the Court on the motion of Defendants Joseph Francis ("Francis"), MRA Holding, LLC ("MRA"), and Mantra Films, Inc. ("Mantra") to vacate the default judgment entered by the Court on March 3, 2011. Plaintiff Amber Arpaio ("Plaintiff") opposes Defendants' motion. For the reasons set forth below, the Court will deny Defendants' motion to vacate.

**I.     BACKGROUND**

On July 11, 2008, Plaintiff commenced this action against Francis, MRA, Mantra, Ashley Dupree, and numerous unnamed individuals and entities. In her complaint, Plaintiff asserts causes of action for invasion of privacy, misappropriation of her name, defamatory injury to her reputation, and conspiracy to commit a tort. Plaintiff's claims stem from Dupre's use of Plaintiff's name and likeness in a salacious video that was subsequently published on the internet by Francis, MRA, and Mantra. The video's publication quickly followed the revelation that

Dupre was the prostitute at the center of the scandal that led to the resignation of former New York Governor Eliot Spitzer.

On December 29, 2008, Plaintiff submitted an affidavit attesting to the difficulty of serving the named defendants. After Plaintiff's counsel filed another affidavit describing the various attempts that had been made to serve Dupre, the Clerk of the Court entered default against Dupre on August 31, 2009. Subsequently, on January 7, 2010, Plaintiff filed proof that Francis, MRA, and Mantra waived service. As a result, the Clerk of the Court entered default against those defendants on April 5, 2010.

On October 19, 2010, the Court conducted a proof and damages hearing during which Plaintiff moved for an entry of default judgment against all defendants. At the hearing, the Court requested that Plaintiff's counsel submit an additional affidavit of service upon defendants, which he filed in November 8, 2010. The affidavit provided proof of the waiver of service by Francis, MRA, and Mantra, and described, *inter alia*, the initial difficulty serving defendants and communications that took place between Plaintiff's counsel and an attorney Dupre had approached in connection with the lawsuit.

On March 3, 2011, the Court granted Plaintiff's application for default judgment as against Francis, MRA, and Mantra, concluding that Plaintiff had met her burden for proving liability as to each of the asserted claims, that she would be prejudiced if default judgment were denied, and that Francis, MRA, and Mantra had made no showing of any litigable defense or that their delay was attributable to any legitimate justification. Having so concluded, the Court entered default judgment against Francis, MRA, and Mantra in the amount of $3,000,000. Because the Court was not satisfied that Dupre had been served properly, it denied Plaintiff's application for default judgment as against Dupre.

On March 2, 2012, one day prior to the expiration of the relevant limitations period, Francis, MRA, and Mantra filed the instant motion to vacate the default judgment entered against them. Therein, they argue that the default judgment should be vacated for lack of personal jurisdiction and on the basis of excusable neglect.

## II. DISCUSSION

Francis, MRA, and Mantra move to vacate the default judgment entered against them pursuant to Federal Rules of Civil Procedure 60(b)(1) and 60(b)(6). Default judgments are generally disfavored in the Third Circuit, and "doubtful cases [are] to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194-95 (3d Cir. 1984)(quoting *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 245 (3d Cir. 1951)). The determination whether to set aside a default judgment pursuant to Rule 60(b) is, however, "left primarily to the discretion of the district court." *Id.* at 194; *see also Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988)("the decision to vacate a default judgment is left to the sound discretion of the trial court").

Rule 60(b) sets forth six bases for relieving a party "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Under Rule 60(b)(4), a court may relieve a party from a final judgment if "the judgment is void," for example if the judgment was rendered by a court that lacked personal jurisdiction over the defendant. Fed. R. Civ. P. 60(b)(4); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). Rule 60(b)(1) provides for relief from a final judgment because of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). In exercising its discretion whether to vacate a default judgment under Rule 60(b)(1), a court must consider the following three factors: "(1) whether the plaintiff will be prejudiced; (2)

3

whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co.,* 756 F.2d 14, 19 (3d Cir. 1985)(internal citations omitted).

    A.    <u>Meritorious Defense</u>

In the Third Circuit, the meritorious-defense factor is considered the "threshold issue in opening a default judgment." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). To demonstrate a meritorious defense, the defendant must set forth "'allegations that, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (internal citations omitted). "Default judgments cannot be set aside simply because of . . . ambiguous conclusions," *id.* at 196, and the defendant must "set forth with some specificity the grounds for his defense." *Harad*, 839 F.2d at 982 ("a defendant does not have the right to have a default judgment set aside automatically upon alleging a defense"). Once those grounds are set forth in sufficient detail, the court will "then look at the substance of that defense to determine whether it is meritorious." *Id.* ("The district court would have applied an incorrect legal standard if it had merely facially scrutinized [the asserted] defense.").

Here, the Court concludes that Defendants have failed to establish a meritorious defense. In support of their motion, Defendants assert that they "categorically deny the crux of Plaintiff's complaint wherein Plaintiff falsely claims that the Defendants released the video clip in question to various media outlets," that Plaintiff assumed the risk of Dupre's use of her driver's license, and that the doctrine of *in pari delicto* applies. Defs.' Br. at 12. However, such threadbare assertions, without more, fall far short of the specificity required to constitute a meritorious defense. *Harad*, 839 F.2d at 982.

Similarly, Defendants' argument that the Court lacks personal jurisdiction does not amount to a meritorious defense.[1]  In determining whether personal jurisdiction over a non-resident defendant is proper, the Third Circuit has set forth an analytical framework that begins with an examination of Federal Rule of Civil Procedure 4(e).  *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998).  Under Rule 4(e), a court may exercise "personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits."  *Id.* (citation omitted).  Pursuant to New Jersey's long-arm statute, the exercise of personal jurisdiction over non-resident defendants is allowable to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.  *Nicholas v. Saul Stone & Co.,* 224 F.3d 179, 184 (3d Cir. 2000).

Due Process, in turn, requires that a defendant have minimum contacts with the forum state and that an exercise of jurisdiction over the defendant comport with "'traditional notions of fair play and substantial justice.'"  *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir. 2001)(quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  Further, "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987)(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Whether sufficient minimum contacts exist depends upon "the nature of the interactions and type of jurisdiction asserted."  *Telcordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 177 (3d Cir. 2006).  Where the cause of action does not arise out of or relate to the defendant's activities in the forum State, but the defendant has "continuous and systematic" contacts with the forum state sufficient to confer personal jurisdiction, a court is said to exercise general jurisdiction over

---

[1] The Court's personal jurisdiction analysis addresses Defendants' arguments under Rules 60(b)(1) and 60(b)(4).

5

the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 (1984). On the other hand, a court exercises specific jurisdiction when the defendant has limited contacts with the forum state but the suit against him arises out of or relates to those contacts. *Id.* at 414 n.8; *see Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007)(specific jurisdiction exists when: (1) the defendant purposefully directs its activities at the forum state, (2) the plaintiff's claim relates to at least one of those activities, and (3) asserting jurisdiction would comport with fair play and substantial justice).

Here, Defendants argue that the Court lacks both general and specific jurisdiction. However, as the basis for their argument, they simply state, without citation or corroborating evidence, that they have no presence in New Jersey, that the video at the center of Plaintiff's complaint was filmed and edited in Florida and California, and that Plaintiff's claims do not arise from any contacts Defendants had with New Jersey. Defs.' Br. at 7-8. As a result, Defendants have failed to satisfy the Court that their personal jurisdiction argument amounts to a meritorious defense. *See Harad*, 839 F.2d at 982; *$55,518.05 in U.S. Currency*, 728 F.2d at 195-96.

Moreover, in both her complaint and the declaration she submitted in opposition to the instant motion, Plaintiff sets forth allegations and evidence that support a finding of specific jurisdiction. *See Marten*, 499 F.3d at 296. Indeed, in her complaint, Plaintiff alleges that Defendants advertised and continue to advertise through various forms of media, including the internet, "throughout the State of New Jersey.[2] Compl. ¶ 36; Am. Compl. ¶ 36. Likewise, in her declaration, Plaintiff attests that Defendants sold the video that forms the basis of her complaint

---

[2] The Court notes that these allegations and others—including those contained in the personal jurisdiction section of Plaintiff's complaint that MRA and Mantra were "authorized to conduct business within the State of New Jersey"— provide one basis for distinguishing the instant case from *New Cosmos Sys. v. Chicago Midwest Export Corp.*, 2011 WL 938739 (D.N.J. Mar. 15, 2011), a decision upon which Defendants rely extensively. *Id.* at *1 (emphasizing that the complaint did not allege that any of the defendants had any contacts with New Jersey or that the events giving rise to the claims took place in New Jersey). Indeed, whereas the Court in *New Cosmos* concluded that it was "quite conceivable that it may lack personal jurisdiction" over the defendant, *id.*, here, for the reasons set forth above, the Court reaches the opposite conclusion as to Francis, MRA, and Mantra.

in New Jersey—both on the internet and in retail locations—and that she and others saw or heard about the video and similar products through various mediums directed toward New Jersey residents, including advertising and marketing on the internet, television and in newspapers. Arpaio Decl. ¶¶ 3, 7, 9-10; *see also* Fell Decl. ¶¶ 4-18.  Accordingly, in light of Defendants' contacts with New Jersey and the related nature of Plaintiff's claims, the Court has an appropriate basis for exercising personal jurisdiction over Defendants.  *See, e.g.*, *Asahi*, 480 U.S. at 109-112; *Marten*, 499 F.3d at 296; *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 453-54 (3d Cir. 2003)(evidence that a defendant "purposefully availed" itself of conducting activity in the forum state includes "directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts"); *IMO Indus. v. Kiekert AG,* 155 F.3d 254, 261 (3d Cir. 1998)(a court may "exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum").

### B. Prejudice to Plaintiff and Culpability of Defendants

Having concluded that Defendants have failed to establish a meritorious defense—"the threshold issue in opening a default judgment"—the Court need not proceed to the remaining two factors relevant to Defendants' motion.  *Hritz*, 732 F.2d at 1181; *see $55,518.05 in U.S. Currency,* 728 F.2d at 195 ("Because . . . [the defendant] failed to establish a meritorious defense, his motion to set aside the entry of default and the default judgment must be denied . . . [and the court need] not decide the issues whether the [plaintiff] would be prejudiced . . . or whether [the defendant's] culpability led to the default and to the default judgment."); *Sourcecorp Inc. v. Croney,* 412 F. App'x 455, 460 (3d Cir. 2011)("We shall not engage in the

7

futile exercise of [vacating a default judgment] in which there is no potential defense"). Nevertheless, it will briefly address each factor in turn.

To determine whether vacating the default judgment would prejudice Plaintiff, the Court must consider whether Plaintiff's "ability to pursue the claim has been hindered . . . [by, for example,] loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 524 (3d Cir. 2006). In that regard, the Court notes Plaintiff's claims that Francis has been engaging in a "corporate shell game" to avoid judgment creditors that has made it "exceedingly difficult . . . to identify key witnesses and documentary evidence." Pl.'s Br. at 2, 14-16. However, because Plaintiff has not presented sufficient evidence to substantiate those claims, the Court makes no finding as to their merit.

With regard to the final factor relevant to Defendants' motion, a lack of culpability is typically found in cases that "involved innocent mishaps or mere mistakes[,]" whereas "'[r]eckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard.'" *Nationwide Mut. Ins. Co.*, 175 F. App'x at 523 (citing *Hritz*, 732 F.2d at 1183). Defendants assert that they bear no culpability in the instant case because their prior attorney is entirely responsible for the failure to file answers and prevent default judgment from being entered. Specifically, Defendants contend that they were "blinded . . . into their current predicament," and that their "innocence in the mishaps that led to the entry of the Order," including their lack of actual notice and the misconduct and neglect of their prior attorney, warrant setting aside the default judgment. Defs.' Br. at 10-11.

As an initial matter, Defendants have not provided any evidence to support their assertions other than Francis' own unsupported statements. Moreover, courts routinely reject

similar attempts to shift the blame onto attorneys, and Defendants acknowledge that waivers of service were executed on their behalf on December 16, 2009.[3] Defs.' Br. at 4; *see, e.g.*, *Cadigan & Park, P.C. v. Abbasid, Inc.*, 434 F. App'x 769, 770-71 (10th Cir. 2011)(finding no error in district court's finding of culpability where defendants attempted to lay blame for untimeliness on attorney); *Great S. Co. v. Davis*, 57 F.3d 1077 (9th Cir. 1995)(affirming denial of motion to set aside default judgment on the basis of excusable neglect where defendant attempted to blame failures on attorney's negligent conduct); *Borges S.A. v. Santos*, 2011 WL 3515996, at *3 (D.N.J. Aug. 11, 2011)("generally a party is deemed to be bound by the acts of his attorney" and "cannot now avoid the consequences of the acts or omissions of this freely selected agent")(internal citations omitted); *Camponovo v. Uwaydah*, 2004 WL 1849630, at *3 (E.D. Pa. Aug. 17, 2004)(rejecting argument that prior counsel was entirely responsible for untimeliness and emphasizing that defendant "does not offer any evidence other than its own unsupported assertions"); *Thompson v. Toyota Motor Corp.,* 157 F.R.D. 10, 13 (D.N.J. 1994)("attorney's ignorance, carelessness, or mistake of law do not present grounds for relief under Rule 60(b)"). Notably, Defendants also failed to file the instant motion until one day prior to the expiration of the limitations period—almost an entire year after default judgment was entered against them. *See Camponovo*, 2004 WL 1849630, at *3 (emphasizing that, "after having judgment entered against it, Defendant then waited an entire year to file this motion for relief, only adding to its history of delay"); *Reid v. Liberty Consumer Discount Co. of Pa.*, 484 F. Supp. 435, 439 (E.D. Pa. 1980)(rejecting argument as to excusable neglect where "no explanation has been offered to the Court as to why the defendant's motion to open the default judgment was not filed until more than six months after the defendant was notified of the entry of the default judgment").

---

[3] Additionally, the declaration and accompanying exhibits submitted by Plaintiff's counsel demonstrate that he corresponded with Defendants' attorney on numerous occasions prior to the entry of default and default judgment, and indicate that Defendants were on notice of the claims against them during that period. *See* Fell Decl.

Accordingly, the Court rejects Defendants' argument as to excusable neglect and concludes that they do bear culpability for the entry of default judgment in this case.

### III.   CONCLUSION

For the reasons set forth above, Defendants' motion to vacate the default judgment entered by the Court on March 3, 2011 is denied.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: August 14, 2012