UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AMBER ARPAIO,**<br><br>Plaintiff,<br><br>v.<br><br>**ASHLEY ALEXANDRA DUPRE,** *et al.***,**<br><br>Defendants. | Civil Action No. 08-3548 (PGS)(LHG)<br><br><br><br>**ORDER AND**<br>**REPORT & RECOMMENDATION** |

This matter is opened to the Court by way of a motion filed by Defendant Joseph Francis ("Francis") for a protective order, by which Francis seeks to avoid attending a deposition in California and producing certain documents (the "Motion"). [Docket Entry No. 111]. Plaintiff Amber Arpaio ("Plaintiff") opposed the Motion and cross-moved for sanctions against Francis. [Docket Entry No. 112]. Francis supplemented his original brief with a reply brief [Docket Entry No. 113], and Plaintiff filed an additional memorandum in opposition to the Motion. [Docket Entry No. 114]. The Court has considered the moving and responding papers without oral argument pursuant to Local Civil Rule 78.1.

For the reasons set forth below, and for good cause shown, the Motion seeking a protective order is denied. In addition, the undersigned respectfully recommends that the Court grant the cross-motion for sanctions in the form of a finding that personal jurisdiction is established, and further imposing on Francis the attorneys' fees and costs associated with Francis's deposition and opposing the Motion.

I.    FACTS & PROCEDURAL HISTORY

In the seven years since Plaintiff filed her Complaint, this case has amassed a lengthy and tortured history. Although the Court set forth portions of this history in an Order dated January

30, 2015 (the "January 30 Order") [Docket Entry No. 108], aspects of the history bear repetition in light of the circumstances of this motion.

In filing this action, Plaintiff alleged that the named defendants produced and distributed a sexually provocative film in which Defendant Alexandra Dupre ("Dupre") represented herself as Plaintiff.  The Complaint listed Dupre, as well as Mantra Films, MRA Holdings, and Francis (Mantra Films, MRA Holdings, and Francis are collectively referred to as the "Francis Defendants").  Waivers of service were executed on behalf of the Francis Defendants, but none filed answers or otherwise moved in response to the Complaint.  Default was entered on April 5, 2010.  The Court conducted a proof hearing on October 19, 2010 [Docket Entry No. 35], and entered default judgment against the Francis Defendants on March 3, 2011.  [Docket Entry No. 40].

On March 2, 2012, the last day defendant could move for relief from final judgment pursuant to Federal Rule of Civil Procedure 60(f), Francis moved to vacate default judgment, arguing, in part, that the Court lacked personal jurisdiction over him.  [Docket Entry No. 48]. The Court denied Francis's motion [Docket Entry No. 53], and Francis appealed that decision to the Court of Appeals for the Third Circuit.  On June 11, 2013, the Third Circuit vacated default judgment and remanded the matter after finding that the record was insufficiently developed to establish personal jurisdiction over Francis.  *See Arpaio v. Dupre*, 527 Fed. App'x 108 (3d Cir. 2013); *see also* Mandate of the United States Court of Appeals for the Third Circuit [Docket Entry No. 56].  The sole issue on remand therefore is whether this Court has personal jurisdiction over Defendant, such that the default judgment entered on March 3, 2011 is proper.

The undersigned conducted an in-person conference with Plaintiff and Abraham Neuhaus, Esq. ("Neuhaus"), then-counsel for Francis, on September 9, 2013 at which time a

schedule for discovery with regard to the limited issue of personal jurisdiction was set (the "September 9 Conference"). [Docket Entry No. 62]. Plaintiff served initial discovery requests and a notice of deposition on Neuhaus, *see* Certificate of Service [Docket Entry No. 63]; *see also* Declaration of Abraham Neuhaus in support of motion to withdraw (the "Neuhaus Decl.") ¶ 7. Neuhaus says that he in turn forwarded the requests to Francis via e-mail. *Id.* ¶ 7. Neuhaus claims that Francis did not provide him with any responses, and Neuhaus withdrew as counsel shortly thereafter.

After the withdrawal of counsel, Francis elected to proceed *pro se*, *see* Notice of Readiness to Proceed Pro Se [Docket Entry No. 76],[1] and Plaintiff attempted to re-serve the earlier discovery requests on Francis. *See* Plaintiff's Memorandum in Support of the June 13, 2014 Motion for Sanctions [Docket Entry No. 96] at 6-7. Francis failed to respond to the discovery requests and did not provide a means of communicating with him directly, despite earlier Orders instructing him to do so. *See generally* January 30 Order at 4-6. As a result, Plaintiff filed a second motion for sanctions, seeking a finding of personal jurisdiction. [Docket Entry No. 96].

In consideration of Francis's *pro se* status and the severity of Plaintiff's requested relief, the Court construed all facts in the light most favorable to Francis. Based on the record presented, the Court made the following findings, *inter alia*: Plaintiff had diligently attempted to serve Francis on numerous occasions; Francis was in actual receipt of several of the discovery requests despite technical errors in the proofs of service filed by Plaintiff; Francis made misrepresentations to the Court about his contact information and frustrated Plaintiff's attempts

---

[1] The Court notes that although Francis is not represented by counsel, he is an extremely sophisticated *pro se* litigant. Francis has been accompanied by counsel during every conference with the Court and his pleadings often include affidavits of attorneys who work on his behalf. In addition, his recent submissions demonstrate a familiarity with the law, as well as skill with legal research and writing.

to serve him by providing a mailing address and telephone number at which he could not personally be reached; and Francis had made every effort to avoid engaging in the discovery necessary to allow this case to proceed.  *See* January 30 Order.

The Court denied the motion for sanctions, deemed the discovery requests in Francis's possession served, and issued a series of rulings designed to eliminate any further obstructions to the completion of discovery.  With regard to Francis's inadequate contact information, the Court ordered Francis to "provide counsel for Plaintiff and the Court with means by which he can be *directly* reached, both for telephone calls and for the service of documents or correspondence;" in the event of any change, Francis was ordered to notify the Court and Counsel within 24 hours. January 30 Order at 20 (emphasis added).

The Court set a specific date, time, and location for the deposition of Francis.  The deposition was scheduled to take place on March 23, 2015, nearly two months after issuance of the January 30 Order, at the United States Courthouse for the Central District of California, a location that would be convenient to Francis based on the address he had given the Court.  The undersigned arranged a room to be reserved for the deposition by the administrative offices of the Central District of California.  The January 30 Order further specified that the parties were prohibited from delaying the deposition past March 23, 2015.  In addition, any change concerning the date or location of the deposition could only be made by mutual agreement of the parties, which would need to be confirmed in writing.  The Court incorporated this level of detail into the Order to avoid any confusion and to ensure compliance.  The January 30 Order also ordered Francis to produce all documents listed in Exhibit A to the December 4, 2013 Notice of Deposition ("Exhibit A").  Finally, the January 30 Order made it clear that failure to abide by its terms would have serious, potentially dispositive, ramifications.

On March 18, 2015, Francis sent Plaintiff's counsel a fax informing counsel for the first time that Francis would not be able to attend the deposition in person because he now resides in Mexico and is no longer in possession of his U.S. passport; Francis requested that the deposition be conducted telephonically either on the originally scheduled date or at another time (the "March 18 Fax").  *See* March 18 Fax (attached as Schedule 1 to the Moving Papers) [Docket Entry No. 111-1 at 31-32].  In addition, Francis objected to the production of the documents as irrelevant to the question of personal jurisdiction.  March 18 Fax.  He threatened to file a motion for a protective order in the Central District of California if counsel did not confirm agreement to his requests within 24-hours.  March 18 Fax.

Due to inclement weather in New Jersey, Plaintiff's counsel did not receive Francis's fax until Friday, March 20, 2015.  Certification of Joseph J. Fell in opposition to the Motion (attached as Exhibit B to Plaintiff's Brief in Opposition) [Docket Entry No. 112-1] ¶¶ 8-9.  Plaintiff responded by filing a notice on the docket (the "March 20 Notice"), in which she informed the Court of the March 18 Fax, stated that she did not consent to Francis's proposed changes to the deposition schedule, and advised that she was not aware of Francis having filed any motion for a protective order.  [Docket Entry No. 110].  Given the timing of the March 18 Fax, Francis's failure to consult with Plaintiff at an earlier point, counsel's non-refundable travel arrangements to California, the lack of any motion for a protective order, and Plaintiff's decision not to consent to the request, Plaintiff indicated that she intended to proceed with the deposition as scheduled.  March 20 Notice at 4-5.

Francis did not appear for the deposition.  *See* Transcript of the March 23 Deposition ("March 23 Tr.") (attached as Exhibit F to the Plaintiff's Brief in Opposition) [Docket Entry No.

5

112-2] at 16:9-10.  Instead, Ronald Tym[2]—an individual who has identified himself as a California attorney appearing for the limited purpose of defending the deposition—was present, as was counsel for Plaintiff.  Tym represented that Francis would neither appear nor produce the required documents for the reasons Francis set forth in the March 18 Fax.  March 23 Tr. at 17:8-15.  Counsel and Tym made a record of Francis's non-appearance and the deposition was adjourned.  *See generally* March 23 Tr.

The Motion, dated March 23, 2015 and docketed by the Court on March 24, 2015, followed.

II.     ARGUMENTS OF THE PARTIES

Francis sets forth two lines of argument regarding the substance of the Motion.  The first concerns the location of the deposition and the second relates to the production of documents listed in Exhibit A.

With regard to the *situs* of the deposition, Francis states that he now resides in Mexico and that he turned his American passport over to the Mexican government as part of an application for permanent residency in Mexico.  Francis's Brief in Support of the Motion ("Br. in Supp.") at 1 [Docket Entry No. 111-1]; Declaration of Francis in Support of the Motion ("Francis Decl.") (attached as Exhibit C to the Motion) ¶¶2-3 [Docket Entry No. 111-1 at 29].  He claims that he provided the passport prior to entry of the January 30 Order and that he did not receive the passport back in time to attend the March 23 Deposition.  Br. in Supp. at 1; Francis Decl. ¶ 3.  He also argues that Plaintiff chose the location of the deposition, contrary to the rule that a party seeking discovery must go to the location of the deponent.  Because Francis no

---

[2] Tym previously accompanied Francis during telephone conferences with the Court but has repeatedly said that he does not represent Francis in this matter.

longer lives in Los Angeles, he says he should not be inconvenienced by being forced to leave Mexico. Br. in Supp. at 4-5. Francis also highlights that Federal Rule of Civil Procedure 30(b)(4) allows for a deposition to be taken remotely and therefore requests that the Court order the deposition to be conducted telephonically or via video conference. Br. in Supp. at 5. With regard to the document production required by the January 30 Order Francis objects, saying that the documents listed in Exhibit A do not relate to whether he has sufficient contacts with the District of New Jersey, and the document request is therefore overbroad.

Francis argues that a motion for a protective order was the only way he could raise his concerns in a timely manner. Reply at 1. He states that he could not appeal the January 30 Order because discovery orders are not usually appealable. Reply at 1. In addition, there was nothing inherently appealable about the January 30 Order because he thought he would have his passport back in time to comply with the Order and he had no basis upon which to object until it was not returned to him prior to the March 23 Deposition. In passing, he asks the Court to consider the application a motion for reconsideration if that would be the more appropriate procedural mechanism. Reply at 1-2.

From Plaintiff's perspective, the Motion is yet another attempt by Francis to make a mockery of the Court's Orders. Opposition at 1. Plaintiff argues that Francis's reason for not attending the deposition is fraudulent because the Mexican government does not require visa applicants to turn over their passports as part of their applications. Opp'n at 4; Sur-reply at 4-5. To the extent that Francis did relocate to Mexico, Plaintiff points out that Francis had plenty of time to advise the Court of this change and the failure to do so was in violation of the January 30 Order, which requires Francis to update the Court and opposing counsel within 24 hours of any address changes. Opp'n at 3; sur-reply at 3-4.

Plaintiff believes that the Motion is procedurally inappropriate and Francis's recourse was to appeal or move for reconsideration of the January 30 Order. Opp'n at 2. The Motion is further flawed because it was filed *after* compliance was required. Opp'n at 2-3.

As a result of Francis's non-attendance at the deposition and his failure to produce any of the documents listed in Exhibit A, Plaintiff seeks sanctions in the form of all costs and fees associated with preparing for and attending the deposition, as well as those associated with opposing the Motion. Opp'n at 4-6. In addition, Plaintiff requests leave of the Court to renew her motion for sanctions in the form of a finding of personal jurisdiction.

III.  DISCUSSION

    A.    Francis's Motion for a Protective Order

Federal Rule of Civil Procedure 26(c) permits a party to move for a protective order to prevent the "annoyance, embarrassment, oppression, or undue burden or expense" that may result from a discovery request or a deposition. A party moving under this rule must include with his motion "a certification that the movant has in good faith attempted to confer with other affected parties in an effort to resolve the dispute without court action."[3] The burden on a given 26(c) motion lies with the moving party, who must make a showing of good cause. *See* Fed. R. Civ. 26(c); *see also Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 129 F.R.D. 483, 484 (D.N.J. 1990). In addition, Rule 26 contains an implicit requirement that the party seeking protection

---

[3] The Rule 26 meet and confer requirement is binding on all litigants, regardless of whether they are represented by an attorney or are proceeding *pro se*. *See, e.g., Rogers v. Giurbino*, 288 F.R.D. 469 (S.D. Cal. 2012); *Lindsey v. Boeing Co.*, 2009 WL 37153 (W.D. Wash. Jan. 6, 2009). Francis's certification in support of the Motion does not address any attempt to confer with counsel for Plaintiff. The March 18 Fax, however, states that "[t]his letter should be considered a 'meet and confer' required by FRCP 26(c)(1)." It is apparent from the tone and timing of the March 18 Fax that Francis provided Plaintiff with an ultimatum and did not engage in an earnest effort to resolve the dispute.

must move in a timely manner, which typically means moving before compliance is required. *See Nestle*, 129 F.R.D. at 487; 8A WRIGHT, MILLER, & KANE, Federal Practice and Procedure: Civil 3d § 2305 (2007). This is consistent with Federal Rule of Civil Procedure 37(d)(2), which declares that a party may not excuse non-compliance with a discovery request on the grounds that the request is objectionable "unless the party failing to act has a *pending* motion for a protective order under Rule 26(c)." (emphasis added).

The Court issued the January 30 Order more than 50 days before the deposition. In doing so, the undersigned provided Francis with explicit instructions on how to reschedule the deposition or seek alternative arrangements, as well as ample time to make any request that followed those instructions. This was not by coincidence. In the January 30 Order, the Court made a specific finding that Francis has done everything in his power to avoid discovery and drag this matter out.

From the outset of this litigation, Francis has maintained that he is a resident of California. He has provided the Court with a Los Angeles address and has consistently signed his pleadings, including the briefs filed in connection with the Motion, with that address. Based upon these representations, the Court, not Plaintiff, found a location for the March 23 Deposition that would be convenient for Francis.

Once in receipt of the January 30 Order, Francis was well aware that he might not be able to attend the March 23 Deposition. *See* Br. in Supp. at 3. He could have and should have notified Plaintiff and the Court and, if necessary, sought the Court's protection sooner. Instead, Francis waited until the eve of the deposition to claim that it would be inconvenient for him to attend the deposition and to request alternative arrangements; he waited until after his non-appearance at the March 23 Deposition to file the Motion. By waiting as he did, Francis violated

9

the January 30 Order and exacerbated a situation that could have easily been resolved through compliance with the Order and responsible communication with opposing counsel and the Court.

In the January 30 Order, the undersigned required the parties to complete the deposition by no later than March 23, 2015; any attempt to delay the deposition beyond that date was a clear violation. Francis sent the March 18 Fax approximately half an hour before the close of business, *see* Cover Page to the March 18 Fax [Docket Entry No. 111-1 at 31] (listing the fax transmission time as 20:25:10 GMT), and provided Plaintiff with 24 hours to respond. Francis refused to appear in person for the deposition as ordered, instead offering to appear telephonically. Even if Plaintiff were inclined to accede to Francis's demand, ensuring that the deposition was taken in accordance with the Federal Rules of Civil Procedure and the January 30 Order would have required Plaintiff to locate and retain an individual before whom a deposition could be taken in a foreign country within a matter of hours. *See* Fed. R. Civ. P. 28(b)(1). If the timing of this did not in and of itself render it impracticable for Plaintiff to set up a telephonic deposition, the fact that Francis did not disclose his location in Mexico rendered it entirely impossible. *See* Fed. R. Civ. P. 30(b)(3), 30(b)(4), and 28(b).

In a similar vein, the objections raised by Francis with regard to the document requests listed in Exhibit A could have been raised, at the latest, upon receipt of the January 30 Order; Francis also had the opportunity to bring these objections to the Court's attention during the briefing on the previous motion for sanctions but did not. Instead, he attached Exhibit A to his opposition to the earlier sanctions motion without commenting on the propriety of those requests. [Docket Entry No. 101].

As such, the Court finds that Francis's motion is unseasonable and that he has not met his burden of showing good cause to order the deposition to take place at a different time and

location or to limit the production requested by Plaintiff.  Accordingly, to the extent that the Motion seeks a protective order, that request is denied.  The Court will, however, proceed to consider Francis's request that the Court construe his Motion as a motion for reconsideration.

      B.      Francis's Request for Reconsideration of the January 30 Order

Local Civil Rule 7.1(i) governs motions for reconsideration and provides for review of a previous Order based upon (a) an intervening change in the applicable law; (b) the availability of evidence or arguments that were not available at the time of the original Order; or (c) the necessity to correct a clear error of law or prevent manifest injustice.  *See, e.g., Rios v. City of Bayonne*, 2015 WL 2400740, at *4 (D.N.J. May 19, 2015).  Reconsideration is an extraordinary remedy and is granted sparingly.  *See NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996).  A motion filed pursuant to Local Civil Rule 7.1(i) must be filed "within 14 days after the entry of the order or judgment on the original motion . . . ."  These motions may not be used to raise arguments that could have been, but were not, brought before the Court in the first instance.  *Wills v. Rothman*, 2012 U.S. Dist. LEXIS 109239, 8–9 (D.N.J. Aug. 3, 2012) (quoting *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001)).

The Motion was filed nearly two months after entry of the January 30 Order and was thus indisputably untimely under the express requirements of Local Civil Rule 7.1(i).  Nonetheless, the Court will review the arguments set forth by Francis as if they fell within the parameters of Rule 7.1(i).  Nothing in Francis's brief suggests that there has been a change in the applicable law.  The Court therefore looks to the remaining two bases upon which a motion for reconsideration may be granted.

Reading Francis's moving papers in the light most favorable to him, the Court infers that Francis seeks to argue that the Court should reconsider the portion of the January 30 Order that

set a specific time and date for the deposition because he could not leave Mexico; requiring compliance would result in manifest injustice. It was not the terms of the January 30 Order or even Francis's inability to leave Mexico, however, that created problem. Rather, it was Francis's failure to communicate with counsel or the Court in a timely manner. Revisiting the January 30 Order would not prevent manifest injustice; doing so would only reward disdain for the sanctity of judicial orders.

To the extent that Francis also asks the Court to reconsider requiring him to produce documents listed in Exhibit A, the undersigned declines to do so. His argument that the documents are not relevant to personal jurisdiction could have been made during briefing on the earlier motion. Francis has offered no bases for the Court to reconsider its prior ruling.

For the reasons set forth above, the undersigned finds that Francis has not articulated any reason for the Court to reconsider the January 30 Order. Accordingly, to the extent that the Motion can be read as seeking reconsideration, the Motion is denied.

      C.     PLAINTIFF'S CROSS-MOTION FOR SANCTIONS

In cross-moving for sanctions, Plaintiff has requested that the Court (1) hold Francis in civil contempt for failing to attend the March 23 Deposition; (2) impose monetary sanctions including attorneys' fees and reasonable expenses related to preparing for and attending the deposition and opposing the Motion; and (3) grant Plaintiff leave to re-file her motion for sanctions in the form of a finding of personal jurisdiction. *See* Opp'n at 7-8.

            1.     Whether a Sanction is Appropriate in these Circumstances

Federal Rule of Civil Procedure 37 invests courts with the authority to sanction a party for failing to cooperate during the discovery process or for failing to comply with a court order. *See* Fed. R. Civ. P. 37(a)(3)(A), (4), (b)(2); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84

(D.N.J. 2006). Rule 37(b)(2)(A) permits a variety of sanctions, including the designation of facts as established, barring a party from supporting or opposing specific claims or defenses, or striking pleadings. "A Court also has the power to assess attorney's fees when a party has acted in bad faith or for oppressive or disruptive reasons. . . . [B]ecause of their very potency, [these] powers must be exercised with restraint and discretion[,] a primary aspect of which is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Barnett v. N.J. Transit Corp.*, Civ. No. 10-3871, 2012 WL 295635, *2 (D.N.J. Feb. 1, 2012) (internal citations omitted) (relying on *Chambers v. NASCO, Inc.,* 501. U.S. 32 (1991)).

Prior to sanctioning a party, the Court must identify whether a violation has indeed occurred. In the instant matter, it is apparent that Francis violated the January 30 Order by failing to appear for the March 23 Deposition and failing to produce the documents listed in Exhibit A. The Order was clear in requiring Francis to appear on March 23, 2015, at 9:30 a.m. Pacific Time unless there was a prior written agreement to change the date and time. As previously noted, by sending a fax late on March 18, 2015, saying he could not attend, Francis unilaterally cancelled the deposition in violation of the Order. The same is true of the documents. He was ordered to produce them and simply refused, belatedly arguing they are not relevant.

The record reflects that Francis only provided Plaintiff with a direct means of contacting him by including a telephone number and an e-mail address in the March 18 Fax. Prior to that, all communication had to go through Tym. As explained in the January 30 Order, that process was fraught with difficulties. The January 30 Order required Francis to

> provide counsel for Plaintiff and the Court with means by which he can be directly reached, both for telephone calls and for the service of documents or correspondence. This includes an address at which certified, overnight, or any other verifiable forms of delivery can be received; Defendant is responsible for

13

> providing a means for this to be done. Defendant must update the Court and counsel for Plaintiff within 24 hours of any change in this contact information

January 30 Order at 20. Francis has yet to provide the Plaintiff and the Court with his current address. Indeed, he never provided the Court with updated information. Given the terms of that Order, the information provided by Francis on March 18, 2015 was simply too little too late. In light of these violations, it is appropriate to sanction Francis.

### 2. What Sanction is Appropriate

As set forth above, Plaintiff seeks sanctions against Francis, including holding him in civil contempt and requiring him to pay the costs and fees associated with the March 23 Deposition and the Motion. In addition, Plaintiff seeks to renew her prior sanctions motion for a finding of personal jurisdiction. In light of having specifically warned Francis that any misconduct might result in sanctions including a possible finding of personal jurisdiction, the Court exercises its discretion pursuant to Federal Rule of Civil Procedure 16(f) and reviews the propriety of that sanction as part of this motion without putting the burden on Plaintiff to file yet another motion.

The Supreme Court has held that the existence of personal jurisdiction is among the facts a court may take as established under Rule 37(b)(2)(A). *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982) (affirming sanction of finding personal jurisdiction after the defendants contravened several court orders by refusing to produce documents that were central to the issue). The Supreme Court explained that any sanction issued pursuant to a trial court's discretionary authority under Rule 37(b)(2) must be both just and "related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* at 707. In determining that the sanction in that case was just, the *Insurance Corp.* Court noted that the trial court repeatedly ordered the defendants to provide the requested materials; there was a

14

pattern of continuous delay and failure to meet discovery deadlines, despite warnings of possible sanctions; the potential for personal jurisdiction was not frivolous and discovery was an appropriate means of substantiating it; and "the proposed sanction made it clear that, even if there was not compliance with the [trial court's final discovery order, the] sanction would not be applied if [the defendants] were to produce . . . information that would indicate an absence of personal jurisdiction." *Id*. at 707-08. The sanction was appropriately related because the disrupted discovery was limited to the issue of *in personam* jurisdiction and the trial court had previously overruled all of the defendants' other objections that might otherwise hinder the completion of discovery. *Id*. at 708-09.

Dispositive sanctions are available to the Court "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Among the reasons a court may channel this inherent power is when it is deemed necessary to prevent undue delays. *See Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir. 1988); *Barkouras v. Hecker*, No. CIV.A. 06-366 (AET), 2007 WL 777664, at *5 (D.N.J. Mar. 12, 2007) ("The non-complying party's handling of a case which causes unreasonable delays and interferes with the expeditious management of trial preparation may serve as a basis for sanctions."). "The court is given broad discretion to impose these sanctions when necessary to insure not only that the parties and their counsel refrain from contumacious behavior but also that the cases are prepared for trial in a sound and efficient manner." *Barkouras*, 2007 WL 777664, at *5. In this case, the undersigned believes it is appropriate to consider such a sanction, in light of the many opportunities Francis has had to be heard and to comply with his obligations, and the repeated warnings he has been given.

When the moving party seeks "sanctions that are tantamount to default judgment because they inevitably lead to liability for [the opposing] party," courts consider the six prong balancing test first set forth in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir.1984):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*See Knoll v. City of Allentown*, 707 F.3d 406, 409 n. 2 (3d Cir. 2013) (citing *Poulis*, 747 F.2d at 868). There is no specific "magic formula" or mechanical method for balancing these factors, nor is a single factor dispositive. *See Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (internal citations omitted).

As to the first *Poulis* factor, the responsibility of the party as opposed to counsel, there can be no question that a *pro se* party is solely responsible for the progress and delays in his case. *See Stezzi v. Citizens Bank of PA*, 542 F. App'x 124, 126 (3d Cir. 2013) *cert. denied sub nom. Stezzi v. Citizens Bank of Pennsylvania*, 134 S. Ct. 1944, 188 L. Ed. 2d 967 (2014); *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008). After the withdrawal of Neuhaus in the winter of 2013, the Court provided Francis with ample time to seek new counsel or to choose to proceed *pro se*. *See* Order dated December 20, 2013 [Docket Entry No. 74]. During the teleconference on December 16, 2013, and during subsequent conferences, the Court impressed upon Francis the burdens and responsibilities associated with representing oneself in federal court. Francis submitted a notice of readiness to proceed *pro se*, dated January 15, 2014 and docketed by the Court on January 17, 2014 [Docket Entry No. 76]. Accordingly, Francis is personally responsible for all of his conduct and misconduct since that time and the undersigned recommends a finding that this factor weighs in favor of a finding of personal jurisdiction.

The second *Poulis* factor requires analysis of the prejudice to the adversary. Here, the most obvious prejudice suffered by Plaintiff is her inability to move her case forward, *see Stezzi*, 542 F. App'x at 126; *Malik v. Hannah*, 661 F. Supp. 2d 485, 492 n.5 (D.N.J. 2009), but the prejudice is greater than that. Plaintiff has been forced to waste large amounts of time and money in litigating this case, first, by obtaining default judgment, then through an appeal to the Third Circuit, and now through endless attempts to discover information from Francis and secure compliance with the Court's Orders. *See Huertas v. U.S. Dep't of Educ.*, 408 F. App'x 639, 640 (3d Cir. 2010). The Court recognizes the exhaustive efforts by Plaintiff to proceed in a diligent manner and recommends a finding that Plaintiff has been prejudiced by Francis's actions.

The third *Poulis* factor, delay, has been a theme throughout the entire history of this suit. Francis chose not to answer the Complaint, instead allowing default judgment to be entered against him. He sought to undo that default judgment on the last possible day, and then belatedly challenged the jurisdiction of this Court. Francis waited until the eve of his deposition to contact Plaintiff and demanded that the date, location, and method of his court-ordered deposition be modified. He also refused to produce documents as ordered, instead waiting until after date for the deposition and production had passed to seek a protective order. The repeated delay and unbridled disregard for the schedules ordered by the Court all point to a finding that the third *Poulis* factor supports a sanction. *See Stezzi*, 542 F. App'x at 126.

In consideration the fourth factor, willfulness, the Court notes that it has given Francis every opportunity to comply with his obligations. The January 30 Order goes painstakingly through the efforts Plaintiff made, and gives Francis the benefit of every doubt, allowing him a final opportunity to comply. That he chose not to do so signals clear willfulness on his part. If Francis had any questions, he could have raised them. If he believed he could not or should not

comply, he could have sought timely relief. Francis has further frustrated resolution of this matter by refusing to provide Plaintiff with means by which he could be contacted directly. Although he included an e-mail address and phone number in the March 18 Fax, that disclosure occurred well over a year after he began representing himself and long after the Court ordered him to do so. The only person benefited by this conduct is Francis, who has effectively suspended Plaintiff's ability to conduct discovery. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 564 F. Supp. 2d 322, 340 (D.N.J. 2008) ("The Third Circuit has made clear that in the context of discovery sanctions, willfulness and bad faith involve intentional or self-serving behavior.")(internal citations omitted); *see also Stezzi*, 542 F. App'x at 126. The undersigned believes there is no other conclusion to be drawn but that his behavior was willful and therefore recommends a finding that the fourth *Poulis* factor supports a sanction as well.

The fifth *Poulis* factor requires consideration of whether less severe sanctions would address the injury that formed the basis for the motion. Monetary sanctions are appropriate to compensate Plaintiff for the money and time spent in relation to the March 23 Deposition and the Motion, but so limiting the sanctions would not be proportional to the harm inflicted by Francis in his hindrance of discovery. Furthermore, the Court does not believe that holding Francis in contempt until he complies with the Court's Orders and his discovery obligations would be an effective sanction: his non-compliance with Court Orders, failure to participate in discovery, consistent delay, and failure to provide adequate contact information strongly suggest that he has no intention of ever participating in discovery in good faith.

In light of the stage of proceedings, the Court is unable to determine the meritoriousness of the claim that the Court lacks personal jurisdiction over Francis, as required by the sixth *Poulis* factor. Accordingly, the undersigned recommends a finding that this factor is neutral.

Francis has been repeatedly cautioned that failure to comply might result in the imposition of a sanction in the form of a finding of personal jurisdiction. He has nonetheless chosen to flout the Court's authority and disregard Order after Order. Accordingly, the undersigned respectfully recommends that Francis be sanctioned with a finding of personal jurisdiction and be ordered to pay attorneys' fees and reasonable expenses associated with the March 23 Deposition and the Motion.

IV. CONCLUSION

The Court having considered this matter pursuant to L.Civ.R. 78.1(b), and for good cause shown,

**IT IS** on this **9th** day of **September, 2015**,

**ORDERED** that Francis's Motion for a Protective Order [Docket Entry No. 111] is **DENIED**; and it is further

**RECOMMENDED** that the Court grant the cross-motion for sanctions, including a factual finding that personal jurisdiction is established and requiring Francis to pay the attorneys' fees and reasonable expenses associated with the March 23 Deposition and the Motion.

Pursuant to Local Civil Rule 72.1(c)(2), the parties have fourteen days from the date of this Report and Recommendation to file and serve objections to the proposed findings and recommendations.

**LOIS H. GOODMAN**
**United States Magistrate Judge**